Estate of Wenninger : Hell, Claimant, Appellant, vs. Prosser, Executor, Respondent.

*December 4, 1941—January 13, 1942.*

*James R. Mattison* of Milwaukee, for the appellant.
*Gerard H. Van Hoof* of Little Chute, for the respondent.

WICKHEM, J. Decedent, shortly after the death of his second wife, desired to have Bertha Hell, the daughter of his second wife by a former marriage, come to the United States from Germany to keep house for him. Bertha Hell had a daughter whom she desired to bring with her. Decedent began correspondence with the Hamburg-American Steamship Company to discover the requirements to satisfy immigration officials that the two proposed immigrants would not become public charges. He thereafter had his banker draw up papers in accordance with his understanding of the necessities of the situation. This resulted in his executing the following paper:

"I, Anton Wenninger, Sr., of Seymour, Outagamie county, state of Wisconsin, United States of America, being duly sworn depose as follows:

"I am the stepfather of Frau Bertha Hell and Ella Hell, her daughter, is my step-granddaughter, and they reside in Furth I Wald, Beiyern, Germany.

"In order that they may be allowed to enter the United States of America to reside with me, which they desire to do in order to keep house for me I agree to the following for their protection and for the protection of the United States of America, that on permission for them to leave for the United States of America and on their arrival at the port of entry, and permission for them to proceed from said port to Seymour, Wisconsin, to immediately—

"(a) Execute a deed of the dwelling house and lot in the city of Seymour, Wis., owned by me, to said Bertha Hell, and to deposit it in escrow in the Seymour State Bank of Seymour, Wis., to be delivered to her upon my death if she survives me, but to me if I survive her;

"(b) To deposit in the Seymour State Bank of Seymour, Wis., United States government bonds to the value of $4,000, to be delivered to said Bertha Hell if she survives me, but to me if I survive her, but reserve unto myself all the income

from said bonds during my lifetime. Said bonds to be deposited in escrow;

"(c) That the income from my estate annually amounts to around $1,600, with which amount I am fully able to support Frau Bertha Hell, her daughter, Ella, and myself; and they and I will reside in the dwelling that I own in the city of Seymour, Wis., which dwelling is free of incumbrance of any kind, and which dwelling and the lot on which it is situated is the same property that I will make a deed of and deposit in escrow as above mentioned.

"Dated at Seymour, Wis., this 23d day of June, 1937.

"ANTON WENNINGER, SR.

"Witness:

"HARRY P. MUEHL.

"CHAS. R. PROSSER.

"Sworn and subscribed to before me this 23d day of June, 1937.

"CHAS. R. PROSSER.

"Notary Public, Outagamie County, Wis.

"My Commission expires Dec. 17/39."

After this paper was executed Bertha Hell and her daughter came to this country and the arrangement was carried out in accordance with the understanding of the parties, except that when decedent died he left a will bequeathing to Bertha Hell the homestead and $2,000 instead of the $4,000 stipulated. Bertha Hell thereupon filed a claim for the $2,000 which would make up the total of $4,000. Her claim is based upon the proposition that while in affidavit form this paper was a contract or undertaking with the immigration authorities for her benefit; that it was delivered to her before she came to this country and that it was in duplicate at that time.

The trial court found that the only requirement of the department of immigration was an affidavit stating where the immigrant would live and how she would be supported; that this paper is nothing more nor less than a response to this demand for information; that the immigration authorities did not mean to exact, and had no power to exact, a contract

on the part of decedent for anybody's benefit; that the sole purpose of the paper was to state facts from which the department of immigration could determine that the immigrants would not become public charges; that the draftsman and the decedent had no intention to execute a binding contract.

The case is not without its difficulties but we conclude that the trial court was in error. The paper in question was executed by the decedent in 1937. At that time the following provisions of federal law relating to the immigration of aliens, all cited from title 8, USCA, as then existing, were in effect. Sec. 131 vested supervision of immigration of aliens into the United States in the department of labor. Under sec. 101, the commissioner of immigration and naturalization was declared to be an officer in the department of labor operating under the direction of the secretary of labor. Sec. 102 vested the commissioner with the administration of all laws relating to immigration of aliens and empowered him to establish such rules and regulations as he deemed best calculated to carry out the provisions of law and to protect the United States "and aliens migrating thereto from fraud and loss, and shall have authority to enter into contract for the support and relief of such aliens as may fall into distress or need public aid." Sec. 136 (i) excluded aliens from admission into the United States who were "likely to become a public charge." Such persons, however, might be admitted under sec. 158:

"Upon the giving of a suitable and proper bond or undertaking, approved by said secretary, in such amount and containing such conditions as he may prescribe. . . ."
"The admission of such alien shall be a consideration for the giving of such bond, undertaking, or cash deposit. . . ."

It is our conclusion that by the last provision quoted there was ample authority to exact an undertaking for the benefit of an immigrant and that, while in affidavit form, doubtless because it contains certain factual representations, the instrument is essentially promissory and contractual. It recites for

its consideration the permission to the aliens to enter the United States. It contains promises that operate necessarily for the benefit of the immigrants and are expressly stated to be for their protection as well as that of the United States. The intention and purpose of the decedent must be ascertained from such manifestations as appear in the writing. This is an agreement (unilateral in character) by decedent with the department of immigration for the benefit of claimant, the consideration being permission by the immigration authorities that she may enter the country. The writing is so clearly expressed to be for claimant's benefit that once it is found to be a contract no problem remains. The claim of Bertha Hell should have been allowed.

*By the Court.*—Judgment reversed, and cause remanded with directions to allow appellant's claim.